RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9 / 15 / 14
MB

UNITED STATES DISTRICT COURT                    b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


DAVID SARPY,                    CIVIL ACTION
        Petitioner              SECTION "P"
                                NO. 1:14-CV-00212
VERSUS

WARDEN, LOUISIANA STATE         JUDGE DEE D. DRELL
PENITENTIARY,                   MAGISTRATE JUDGE JAMES D. KIRK
        Respondent


                REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

        Before the court is a petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by petitioner David Sarpy ("Sarpy") on

February 6, 2014.   Sarpy is contesting his 2010 convictions and

sentences, by a jury in the Louisiana 10th Judicial District Court

in Natchitoches Parish, on one count of second degree murder and

one count of attempted second degree murder; Sarpy was sentenced to

life imprisonment plus fifty years (Doc. 1).   Sarpy raises the

following grounds for relief in his habeas petition:

        1. Whether the state court's decision was unreasonable in
        denying Sarpy's insufficient evidence claim?

        2. Whether the state court's decision was unreasonable in
        denying Sarpy's Batson claims?

        3. Whether the state court's decision was unreasonable in
        denying petitioner's motion to suppress his illegally
        obtained confession, in violation of Miranda?

        4. Whether the state court's decision was unreasonable in
        denying Sarpy's Brady claim?

        5. Whether the state court's decision was unreasonable in

denying Sarpy's prosecutorial misconduct claims?

6. Whether the state court's decision was unreasonable in denying Sarpy's ineffective assistance of counsel claims?

7. Whether the state court's decision was unreasonable in denying petitioner's challenge for cause claims?

Sarpy claims and the Respondent admits exhaustion of Sarpy's state court remedies.  Sarpy's habeas petition is now before the court for disposition.

<u>Facts</u>

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal, at <u>State v. Sarpy</u>, 10-700 (La.App.3d Cir. 12/8/10), 52 So.3d 1032, 1035-1036, writ den., 2011-KO-0046 (La. 6/3/11), 63 So.3d 1006), are as follows:

"Between 5:00 and 5:30 a.m. on June 26, 2005, the defendant broke into the home of Timothy and Melinda Mitchell in Natchitoches Parish. The defendant gained entry into the Mitchells' home through a wooden kitchen door that had multiple glass panes near the top of the door. Several of the glass panes had been removed from the door, and pruning shears were used to cut through the wooden slats. Once inside the home, the defendant entered the bedroom of Tyler, the Mitchells' fifteen-year-old son, and started choking him. In the course of the struggle, Tyler scratched the defendant. Melinda awakened Timothy when she heard Tyler struggle, and, on Timothy's suggestion, Melinda left the house, hid in a nearby field, and called 911 while he investigated the noise they heard. When Timothy entered Tyler's room, the defendant fired three .22 caliber bullets into Timothy's chest; Timothy died as a result of his injuries. Before fleeing, the defendant shot Tyler twice, once in the left, upper back and once just above one of his knees; FN1 Tyler recovered from his injuries. The Mitchells' other son, Jordan, was not harmed. The defendant fled the scene.
FN1. Investigators found evidence of six shots: five struck the two victims and a sixth shot strayed and

2

impacted a wall located in the hall.

"After personnel with the Natchitoches Parish Sheriff's Office secured the crime scene, persons with the Louisiana State Police Crime Lab (hereafter the Crime Lab) took photographs and collected fingerprint evidence. FN2 At the direction of Charles A. Curtis, Jr., the Natchitoches Parish Coroner, Ruth Hubbard, a forensic nurse, took swab samples from Tyler's neck and shoulders (where the defendant attempted strangulation) and removed scrapings from under Tyler's fingernails. Crime Lab personnel documented the following items that were left in Tyler's room: a black do-rag; FN3 a pair of brown shoes, which did not belong to the Mitchells; rolling paper; and the red-handled pruning shears used by the defendant to enter the Mitchells' home.

    FN2. Although numerous fingerprints were obtained at the crime scene, Julie Bergen, an expert in latent fingerprint analysis who worked for the Crime Lab, testified that all latent fingerprints that could be identified belonged to members of the Mitchell family.

    FN3. Testimony at trial described a do-rag as a spandex head sock.

"These crimes remained unsolved for approximately two years. After eliminating several individuals as suspects through the use of DNA analysis, street talk led the investigators to the defendant. At the request of the Natchitoches Parish Sheriff's Office, deputies in Rapides Parish collected a DNA sample from defendant; that sample was returned to Natchitoches Parish and was delivered to the Crime Lab for analysis. In due time, Marcy Herndon, an expert DNA analyst with the Crime Lab, matched the defendant's DNA sample to the DNA evidence found in the fingernail scrapings taken from Tyler's left hand.

"After receiving information about the defendant's possible involvement in these crimes, Victor Jones, the Natchitoches Parish Sheriff, and Travis Trammell, Jr., a detective with the Natchitoches Parish Sheriff's Office who was responsible for the investigation of these crimes, interviewed the defendant on August 6, 2007, in Rapides Parish. At 1:15 p.m., the defendant signed a form acknowledging his Miranda FN4 rights and indicated that he read a statement of his rights, that he understood those rights, and that he was willing to make a statement and answer questions. He further indicated that he did not want a lawyer at that time and that no promises or

threats and no pressure or coercion was used against him. In fact, Detective Trammel stated that the defendant 'wondered what took us so long to, to be coming to see him.' Thereafter, the defendant confessed to the murder of Timothy Mitchell and the shooting of Tyler Mitchell.

 FN4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"Approximately an hour later, at 2:14 p.m., the defendant again signed a form acknowledging his Miranda rights and a waiver thereof identical to that signed earlier. The defendant then provided a tape-recorded statement in which he detailed the crimes. FN5 In his taped confession, which consisted of questions and answers, the defendant said that: (1) he broke a window in a door on the back porch of the Mitchell residence to gain entry to the house; (2) he used something he found lying right down beside the door to break the window; (3) he randomly picked this house; (4) he did not know the Mitchells and did not think anyone was home; (5) he 'went in there to steal stuff'; (6) he went into one of the rooms in the house and started wrestling with an individual who surprised him in the house, and he was scratched around his shoulders during the struggle; (7) he shot another individual who came into the room where he was wrestling; (8) he did not remember if he shot anyone else before he ran out the house and did not know how many times he shot; (9) he used a gun that he had 'stolen ... out of somebody's house' about a month before and he threw the gun into the river when he fled; (10) he left shoes behind at the Mitchell home and he probably got those shoes from a house he had broken into earlier; and (11) he had parked his car alongside a corn field on the right side of Fish Hatchery Road, just past the Mitchell home, and he fled in the car and went to his cousin's house in Melrose."

<u>Rule 8(a) Resolution</u>

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of

the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

5

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.   A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts.   Martin, 246 F.3d at 476, and cases cited therein.

<u>Law and Analysis</u>

<u>Ground 1 - Insufficient Evidence Claim</u>

First, Sarpy contends the state court erred in denying his claim that there is insufficient evidence to support his convictions.   Sarpy contends the State failed to prove beyond a reasonable doubt that Sarpy murdered Timothy Mitchell and attempted to murder Tyler Mitchell.   Specifically, Sarpy contends that the probability of DNA transfer from the do-rag to Tyler's fingernail was not investigated by the State.

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   <u>Cupit v. Whitley</u>, 28 F.2d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163, 115 S.Ct. 1128,

6

130 L.Ed.2d 1091 (1995), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997), citing Jackson v. Virginia, 443 U.S. at 322-26, 99 S.Ct. at 2791-92. To apply this standard, the court looks to elements of the offense as defined by state substantive law. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a State court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. Ramirez v. Dretke, 398 F.2d 691, 693 (5th Cir. 2005).

A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to a great deal of deference by a reviewing court. Marshall v. Lonberger, 459 U.S. 422, 433-35, 103 S.Ct. 843, 850-51 (1983). In addition, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight.

Jackson, 443 U.S. at 322 n.15, 99 S.Ct. at 2790 n.15.

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury. United States v. Young, 107 Fed.Appx. 442, 443 (5th Cir. 2004), citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993).

In Louisiana, the elements of second degree murder that are presented in this case are (1) the killing of a human being (2) when the offender has the specific intent to kill or to inflict great bodily harm OR when the offender is engaged in the perpetration of attempted perpetration of an enumerated felony, such as aggravated burglary. La. R.S. 14:30.1.

Sarpy argues that he was in the Mitchell home to commit a burglary, not to assault or kill anyone. Sarpy contends that the presence of his DNA on the do-rag found on the floor of the victims' home was inconclusive because it had DNA from at least three people on it. Sarpy argues that someone could have worn the do-rag after he did and left it in the Mitchells' home. Sarpy also argues that DNA from an unknown person was found around the left and right shoulders of Tyler Mitchell, indicating that Sarpy was not the person who choked Tyler Mitchell. Sarpy contends the eye witness (Tyler Mitchell) testified that the assailant was big, muscular and black; however, Sarpy is slight and light complected.

Finally, Sarpy contends the DNA expert testified there was an unknown person's DNA on a rolling paper in the victims' room and Sarpy's DNA and finger prints were not found anywhere else in the home or on the spent 22 cartridges recovered from the crime scene.

After extensive review of the evidence adduced at trial, the Louisiana Third Circuit Court of Appeal found, on the issue of sufficiency of the evidence:

> "The defendant confessed to the commission of the offenses. Further, his DNA was present on the do-rag found in Tyler's bedroom and in scrapings taken from Tyler's fingernails. Viewing the evidence in a light most favorable to the prosecution, we find that the State proved beyond a reasonable doubt that the defendant committed the offenses at issue."

Sarpy, 52 So.3d at 1040.

Sarpy admitted in his statement to the police that he had broken into the victims' home with the intent to rob it, was carrying a gun, he wrestled with two people in the house and shot at them several times, then he ran out of the house (Doc. 11, pp. 611, 1096-1098).  The DNA expert testified that Sarpy's DNA was found under fingernails on victim Tyler Mitchell's left hand, and on the inner and outer do-rag (Doc. 11, pp. 107, 764-769).

It is not the role of this court to re-weigh the evidence in this case.  The Court of Appeal made a considered review of the evidence and upheld the verdict in a well-reasoned opinion.  This court cannot say the State Court's reasoning resulted in a decision that was based on an unreasonable determination of the facts in

9

light of the evidence presented in the State Court proceedings.

Therefore, this ground for relief is meritless.

Ground 2 - Batson Claims

Next, Sarpy contends the state court's decision to deny his Batson claims was unreasonable. Sarpy complains that the prosecutor used the State's tenth peremptory strike to strike potential juror Mary Taylor because she did not own her own home and was divorced. Sarpy contends the prosecutor did not strike other potential jurors who were divorced or did not own their own home, and that the prosecutor actually struck Mary Taylor because she was black.

Racial discrimination by the State or the defendant in jury selection offends the Equal Protection Clause. Georgia v. McCollum, 505 U.S. 42, 112 S.Ct 2348 (1992), citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986). A defendant has the right to be tried by a jury whose members are selected by nondiscriminatory criteria. Powers v. Ohio, 499 U.S. 400, 404, 111 S.Ct. 1364, 1467 (1991). A person's race simply is unrelated to his or her fitness as a juror. Powers, 499 U.S. at 410, 111 S.Ct. at 1470.

Evaluation of a Batson[1] motion is a three step process. First, the complaining party must make a prima facie showing that opposing counsel has exercised peremptory strikes in a

---

[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986).

10

discriminatory manner. <u>Snyder v. Louisiana</u>, 552 U.S. 472, 476, 128 S.Ct. 1203, 1207 (2008).   The combination of factors needed to establish a prima facie case are: (1) the defendant must demonstrate that the prosecutor's challenge was directed at a member of a cognizable group; (2) the defendant must then show the challenge was peremptory rather than for cause; and (3) finally, the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of being a member of that cognizable group.   Relevant facts or circumstantial evidence of discriminatory intent include proof of a disparate impact and a "pattern" of strikes against jurors, as well as questions and statements made during voir dire. <u>Batson</u>, 476 U.S. at 96-97, 106 S.Ct. at 1723.

Second, after this showing is made, the burden shifts to the striking party to articulate a race neutral explanation for striking the jurors in question. <u>Snyder</u>, 552 U.S. at 476, 128 S.Ct. at 1207.   In a peremptory challenge, the prosecution's explanation need not rise to the level of justifying exercise of a challenge for cause. <u>Batson</u>, 476 U.S. at 97, 106 S.Ct. at 1723.

Finally, the trial court must determine whether the complaining party has carried his burden of proving purposeful discrimination. <u>Snyder</u>, 552 U.S. at 476, 128 S.Ct. at 1207. Also, <u>Hernandez v. New York</u>, 500 U.S. 352, 111 S.Ct. 1859, 1865 (1991); <u>Palmer v. Lares</u>, 42 F.3d 975, 979 (5th Cir. 1995), citing <u>Batson</u>,

476 U.S. at 96-97, 106 S.Ct. at 1722-23.  The critical question in determining whether a prisoner has proven purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike.  At this stage, implausible or fantastic justifications may be found to be pretexts for purposeful discrimination.  Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 1040 (2003), and cases cited therein.

The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal.  Hernandez, 111 S.Ct. at 1868. On federal habeas review of a state conviction, 28 U.S.C. §2254(e) requires the federal courts to accord state court factual findings a presumption of correctness.  Hernandez, 111 S.Ct. at 1869.  The trier of fact's conclusion should be accepted unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Hernandez, 111 S.Ct. at 1871.

Sarpy objected when the prosecutor excused Mary Taylor, arguing that she was the seventh black person the prosecutor had struck from the jury (Doc. 11, p. 1312).  The prosecutor stated that he struck Mary Taylor because she is divorced and the victims are a close-knit family, and because she does not own her own home

and the case involved a home invasion (Doc. 11, pp. 116-117).  The trial judge noted that the prosecutor had asked every potential juror whether they owned their own home, so he apparently believed it was an important factor and it was a race-neutral explanation for striking Mary Taylor (Doc. 11, pp. 1314-1315).

The Court of Appeal reviewed the jury voir dire and found the race of each potential juror had not been noted for the record, so the court could not determine from the record whether prospective jurors of different races, who were similarly situated, had been treated differently by the prosecutor.  The state court concluded there was no evidence that the State's exercise of its peremptory challenges was racially motivated.  <u>Sarpy</u>, 52 So.3d at 1044. Therefore, the Court of Appeal found that Sarpy had not carried his initial burden of proving a prima facie case of discrimination.

In his habeas petition, Sarpy has not carried his burden of proving that the state courts' finding of no discrimination is so lacking in support in the evidence that to give it effect would be fundamentally unfair.  The evidence and circumstances do not indicate that the prosecutor peremptorily challenged Mary Taylor due to a racial motivation.  Therefore, this court cannot find that the trier of fact's view of the evidence was clearly erroneous.

This ground for relief is meritless.

<u>Ground 3 - Sarpy's Confession</u>

Sarpy contends the state court's decision to deny his motion

to suppress his illegally obtained confession (in violation of Miranda[2]) was unreasonable.  Sarpy claims he did not make his statement voluntarily and that Trammell coerced his confession by telling Sarpy he was facing the death penalty.  Sarpy contends he was interrogated for an hour before his statement was recorded, and that his right to counsel had attached.

A confession is voluntary in the absence of official overreaching, in the form of either direct coercion or subtle forms of psychological persuasion.  U.S. v. Rojas-Martinez, 968 F.2d 415, 418 (5th Cir.), cert. den., 506 U.S. 1039, 1059, 113 S.Ct. 828, 995 (1992).  Also, U.S. v. Raymer, 876 F.2d 383, 386-87 (5th Cir.), cert. den., 493 U.S. 870, 110 S.Ct. 198 (1989); Bell v. Lynaugh, 663 F.Supp. 405, 413 (E.D.Tex.), aff'd, 828 F.2d 1085 (5th Cir.), cert. den., 484 U.S. 933, 108 S.Ct. 310 (1987).  Voluntariness depends on the totality of the circumstances and must be evaluated on a case by case basis under Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 520-21 (1986).  Coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.  Penry v. Lynaugh, 832 F.2d 915, 918 (5th Cir. 1987), rev'd in part on other grounds, 492 U.S. 302, 109 S.Ct. 2934 (1989), citing Connelly, 107 S.Ct. at 522.  Miranda protects

---

[2] Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966).

defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that. <u>Connelly</u>, 107 S.Ct. at 524.

Sarpy signed two written <u>Miranda</u> warnings and waiver of rights forms on August 6, 2007, at 1:15 p.m. and at 2:14 p.m., waiving his right to counsel (Doc. 11, pp. 1094-1095, 1108). Also, the transcript of Sarpy's interview, on August 6, 2007 at 2:13 p.m. with Deputy Sheriff Trammell, shows that Sarpy's rights were verbally explained to him at the beginning of the interview, he said that he understood those rights, and he acknowledged that he had already signed a waver of rights form (Doc. 11, p. 1096).

There is no dispute that Sarpy had a right to counsel when he gave his statement to the police. Trammell testified that he spoke to Sarpy for an hour prior to Sarpy giving his recorded statement (Doc. 11, p. 638). According to Trammell, Sarpy was "very cooperative" and "completely willing" to make a statement (Doc. 11, p. 613), never stated that he wanted an attorney (Doc. 11, p. 608), and appeared to be relieved after he gave his statement (Doc. 11, p. 620). Trammell also testified that Sarpy confessed to having committed the offense within about fifteen minutes of the interview and that they discussed it before his statement was recorded (Doc. 11, p. 680). At the hearing, Trammell testified that he did not promise Sarpy anything, did not threaten or coerce him into making his statement, and Sarpy never asked for an attorney (Doc. 11, pp.

15

1055-1056).

Sheriff Jones testified at the hearing on the motion to suppress that neither he nor Detective Trammel coerced or threatened Sarpy into signing a waiver of rights form, nor did they promise Sarpy anything if he signed the form, Sarpy appeared to understand the waiver of rights form and did not ask any questions, Sarpy signed the waiver of rights form voluntarily before giving a recorded statement, and Sarpy never asked for an attorney (Doc. 11, pp. 1076-1077).  The trial court found that Sarpy had waived his rights and signed a written <u>Miranda</u> warnings form, and that Sarpy had willingly, knowingly and intelligently given a statement to the police (Doc. 11, pp. 1379-1380).

Sarpy has not carried his burden of proving that the state courts' conclusion, that Sarpy willingly, knowingly and intelligently gave his statement to the police, was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Sarpy contends he was intimidated into making his statement by Detective Trammell threatening him with the death penalty. Trammell testified at trial that he did not advise Sarpy that he could be facing the death penalty or of the possible jail time he was facing (Doc. 11, pp. 628, 684).  A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will.  Telling

a defendant in a noncoercive manner of the realistically expected penalties and encouraging him to tell the truth is no more than affording him the chance to make an informed decision with respect to his cooperation with the government. U.S. v. Ballard, 586 F.2d 1060, 1063 (5th Cir. 1978). Also, U.S. v. Zuniga-Amarao, 990 F.2d 627, *3 (5th Cir. 1993). Therefore, even if Trammell had advised Sarpy of the possible penalties, that would not, by itself, constitute coercion.

This ground for relief is meritless.

Ground 4 - Brady Claim

Next, Sarpy contends state court's decision to deny his Brady claim was unreasonable. Sarpy's claim, that the State suppressed evidence favorable to the defense, stems from Detective Travis Trammel's testimony that he had heard a rumor that an individual named Carlos Grigsby had committed the crimes with which Sarpy was charged.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In order

to establish that evidence falls within the purview of <u>Brady</u>, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. <u>Williams v. Whitley</u>, 940 F.2d 132, 133 (5th Cir. 1991). The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the report been disclosed to the defendant the result of the proceeding would have been different. <u>Wilson v. Whitley</u>, 28 F.3d at 434, citing <u>Bagley</u>, 473 U.S. at 682, 105 S.Ct. at 3383. The prosecutor is not required to deliver his entire file, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. <u>Wilson</u>, 28 F.3d at 435.

Detective Travis Trammel testified that he had heard a rumor that an individual named Carlos Grigsby may have committed the crimes with which Sarpy was charged (Doc. 11, pp. 604, 632-636). However, DNA tests proved that Grigsby's DNA was not found at the crime scene or under Tyler Mitchell's fingernails (Doc. 11, pp. 633, 757-758). The state courts found there was no <u>Brady</u> violation because Sarpy had not been denied exculpatory evidence, the DNA tests excluded Grigsby as a suspect, and suspicion had briefly rested on Grigsby due to hearsay (rumors) only (Doc. 11, pp. 1381-1382, 1394, 1396).

Since DNA tests showed that Grigsby was not the person who attacked the Mitchells, the rumor as to Grigsby was not exculpatory

evidence.   Therefore, Sarpy has not carried his burden of proving there is a reasonable probability that, had the rumor about Carlos Grigsby been disclosed to Sarpy, the result of his trial would have been different.

This ground for relief is meritless.

Ground 5 - Prosecutorial Misconduct

Sarpy also contends the state court's decision to deny his claim of prosecutorial misconduct was unreasonable.   Sarpy complains that (1) in his opening statement and his closing argument, the prosecutor told the jury that Sarpy was guilty; (2) it was improper and prejudicial for the prosecutor to use Sarpy's past crimes to show character ("defendant breaks in people houses, that's what he does," "You also heard testimony or not testimony but a stipulation about the fact that the defendant has been convicted in Natchitoches Parish on previous occasions of two counts of simple burglary") and, in any event, Sarpy was previously convicted of breaking into a business and had never broken into an inhabited dwelling or a home; (3) the prosecutor erred in arguing that he did not know what Sarpy looked like at the time the crime was committed, which was a reference to the fact that, at the time of trial, Sarpy was short and light-complected, while the intruder had been described as big, muscular and dark-skinned; (4) the prosecutor committed misconduct in delaying the indictment, after Sarpy's DNA was matched to the crime scene DNA, in order to gain a

confession from Sarpy while he was in jail on an unrelated charge;
(5) the prosecutor committed misconduct by allowing the State's
expert witnesses to testify falsely that the kitchen door was the
point of entry; and (6) the cumulative effect of these errors
hindered the defense and resulted in a fundamentally unfair trial.

1.

Sarpy contends that it was misconduct for the prosecutor to
tell the jury that Sarpy was guilty in his opening statement and
closing argument.[3]   Sarpy also contends he had ineffective
assistance of counsel due to his attorney's failure to object to
the prosecutor's prejudicial comments as to Sarpy's guilt during
his opening statement and closing argument.

Sarpy failed to object at trial to the prosecutor's comments
(Doc. 11, pp. 1036-1039, 1284-1288), so the trial court held the
claim was waived (Doc. 11, p. 1365), the Court of Appeal summarily
affirmed the trial court's decision (Doc. 11, p. 1394), and the
Supreme Court summarily denied writs (Doc. 11, p. 1396).

---

[3] In his opening statement, the prosecutor made comments
such as, "[T]his case is about the Second Degree Murder of
Timothy Mitchell committed by the defendant David Sarpy seated
over there at the defense table and also the Attempted Second
Degree Murder of Timothy Mitchell's son, Timothy Tyler Mitchell"
(Doc. 11, p. 1260).  In his closing argument, the prosecutor made
statements as to Sarpy's guilt, such as, "He shot and killed
Timothy Mitchell in Tyler's doorway and shot Tyler, trying to
kill Tyler" (Doc. 11, pp. 1285-1286), "He's guilty" (Doc. 11, p.
1287) and "He killed Timothy Mitchell and intended to, pumping
those three bullets into his chest, tried to kill Tyler on two
different occasions, choking him, shooting him" (Doc. 11, p.
1288).

Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. Lott V. Hargett, 80 F.3d 161, 164 (5th Cir. 1996).

In the case at bar, the state courts found Sarpy waived his claims as to the prosecutor's comments because he failed to object to them at trial. Therefore, Sarpy's claims as to the prosecutor's comments are procedurally barred from habeas review. However, Sarpy also contends he had ineffective assistance of counsel because his attorney failed to object at trial. Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984): (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings

would have been different.  To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting.  The court does not assess any alleged error in isolation.  Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.  Although ineffective assistance of counsel can constitute cause, "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation."  Coleman v. Thompson, 501 U.S. 722, 755, 111 S.Ct. 2546, 2567 (1991).  In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof.  U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

Sarpy contends the prosecutor's comments amounted to misconduct.  The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.  Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.  Prosecutorial misbehavior, alone, does not constitute a wrong of constitutional dimension and does not require a new trial.  Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940 (1982).  The materiality requirement implicitly recognizes that the misconduct's effect on

the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.  <u>Smith</u>, 455 U.S. at 220 n.10, 102 S.Ct. at 947 n.10.

Sarpy complains about the prosecutor's statements as to Sarpy's guilt. It is permissible for an attorney to make statements that indicate his opinion or knowledge of the case if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.  <u>United States v. Thompson</u>, 482 F.3d 781, 786 (5th Cir. 2007), citing <u>United States v. Morris</u>, 568 F.2d 396, 401 (5th Cir. 1978)).  Except to the extent the prosecutor bases any opinion on the evidence in the case, a prosecutor may not express his or her personal opinion on the merits of the case or the credibility of witnesses.  <u>Thompson</u>, 482 F.3d at 786.

In the case at bar, the prosecutor stated more than once that Sarpy was guilty, but immediately backed up those statements with a recitation of the evidence to be presented (in the opening statement) or that had been presented (in the closing argument) (Doc. 11, pp. 1036-1039, 1284-1288).  Considering the argument as a whole and the evidence, including Sarpy's inculpatory statement, the prosecutor's comments were presented as conclusions drawn from the evidence and did not amount to prejudicial misconduct.  Since the prosecutor's comments did not amount to misconduct, the defense attorney did not err in failing to object to those comments, and Sarpy did not have ineffective assistance of counsel.

Therefore, Sarpy has not carried his burden of proving that he had ineffective assistance of counsel to overcome the procedural bar to consideration of his claim.   This claim is procedurally barred.

2.

Sarpy also complains that it was improper and prejudicial for the prosecutor to use Sarpy's past crimes to show his bad character.   Sarpy argues he was convicted of breaking into a business, but he never broke into an inhabited dwelling or a home. Sarpy also contends his attorney was ineffective because he accepted a joint stipulation as to Sarpy's past crimes.

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief.   Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. 1981).   Thus, claims challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law.   In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause.   Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir.), cert. denied 524 U.S. 979, 119 S.Ct. 28 (1998), and cases cited

therein.

The Fifth Circuit has held that, in Louisiana, evidence of other crimes can be admitted to show intent, knowledge or system, but not to show motive. However, other crimes evidence introduced to show motive, in violation of Louisiana evidentiary rules, does not rise to the level of a constitutional violation. Webb v. Blackburn, 773 F.2d 646, 652 (5th Cir. 1985).

In the case at bar, Sarpy was charged with felony-murder (second degree murder) and attempted felony-murder based on the aggravated burglery Sarpy was attempting to commit (Doc. 11, p. 333). Before trial, the prosecutor provided Sarpy with notice[4] that he intended to introduce evidence that Sarpy had previously pleaded guilty to two simple burglary charges (Doc. 1, p. 194), and Sarpy's attorney objected (Doc. 11, pp. 332-333). A hearing was held and the trial judge held the evidence would be admissible only as to the convictions (Doc. 11, p. 333). Sarpy's attorney objected to the ruling, but his objection was overruled (Doc. 11, p. 333). Subsequently, at trial, the prosecutor and defense counsel jointly stipulated that Sarpy had been previously convicted on two counts of Simple Burglary on April 4, 2005 in Natchitoches Parish (Doc. 11, p. 772).

Sarpy has not shown the prosecutor intended to introduce his two prior burglary convictions in order to show the jury that Sarpy

---

[4] State v. Prieur, 277 So.2d 126, 128 (La. 1973).

was a "bad man" rather than to show system and intent, or that his trial for murder and attempted murder was rendered fundamentally by the admission of the prior burglary convictions. Moreover, even if the evidence of his prior convictions was admitted for improper purposes, Sarpy's constitutional rights were not violated. Although Sarpy argues that he was previously convicted for breaking into a business and that he had never before broken into an inhabited dwelling or home, he has not shown that, if true,[5] his trial was rendered fundamentally unfair due to that distinction.

Since Sarpy's attorney objected to the admission of the previous conviction and jointly stipulated to the convictions after the trial judge overruled his objections and held they were admissible, Sarpy has not shown that his attorney erred or that his trial was rendered fundamentally unfair by the stipulation.

Therefore, Sarpy has not carried his burden of proving his constitutional rights were violated when the prosecutor introduced evidence of his prior burglary convictions or that he had ineffective assistance of counsel. This ground for relief is meritless.

3.

Sarpy next contends the prosecutor erred in arguing that he

---

[5] It is noted that, in his recorded statement, Sarpy stated that he had left his shoes behind at the crime scene and that he had probably gotten the shoes from another house he had broken into previously (Doc. 11, p. 1102). This statement refutes his argument that he had never burgled a house before.

did not know what Sarpy looked like at the time the crime was committed, which was a reference to the fact that, at the time of trial, Sarpy was short and light-complected, while the intruder was described (by Tyler Mitchell) as big, muscular and dark-skinned.

The prosecutor stated, "Having the defendant stand up and all of that now, we don't know what he looked like when he, several years ago when he was 21 years old" (Doc. 1, Ex. R, p. 272; Doc. 11, p. 1288).  The prosecutor was referring to the fact that the offense took place in June 2005, which is when Tyler Mitchell gave his description of the person who attacked him and his dad.  The trial took place in October 2009, so there was a gap of more than four years in which Sarpy could, according to the prosecutor's statement, have changed in appearance.  Sarpy contends the prosecutor had a 2005 probation photograph of Sarpy which showed that, in 2005, Sarpy had a small build, was short, and was light complected and did not match Tyler Mitchell's description of the attacker.

Sarpy has not alleged or shown how the prosecutor's comment on his appearance violated his constitutional rights.  It was the role of the trier of fact, not the federal habeas court, to decide whether Tyler's Mitchell's description was accurate, whether the prosecutor's argument as to Sarpy's appearance had any merit, and to weigh all of the evidence introduced at trial.  Since Sarpy has not alleged a cognizable claim for habeas relief, this ground for

habeas relief is meritless.

4.

Sarpy contends the prosecutor committed misconduct in delaying the indictment, after Sarpy's DNA was matched to the crime scene DNA, in order to gain a confession from Sarpy while he was in jail on an unrelated charge.

The offense was committed on June 25, 2005 (Doc. 11, p. 355). The initial request for DNA analysis of the evidence taken from the victims and the crime scene was made on July 6, 2005 (Doc. 11, p. 1116). Requests for DNA analysis on a swab from Carlos Grigsby was made on September 15, 2005 (Doc. 11, p. 1118), on a swab from Corey Christenson was made on September 29, 2005 (Doc. 11, p. 1119), on swabs from Kamela Moss, Thurston Williams, and Ron Prelow was made on May 3, 2006 (Doc. 11, p. 1121), and on a swab from SARPY was made on March 5, 2007 (Doc. 11, p. 1122). The crime lab notified the police of a DNA match with SARPY by letter on March 14, 2007 (Doc. 11, p. 540). The indictment against SARPY was filed on August 15, 2007 (Doc. 11, p. 355).

SARPY has not alleged the violation of a constitutional right from the five month delay between obtaining the DNA evidence against SARPY and indicting and arresting SARPY. SARPY has not alleged or shown any prejudice to his defense arising from the five month delay and the five month delay does not appear to have been oppressive. As SARPY admits, he was not arrested for the murder

28

and attempted murder until after he was indicted, since he was already incarcerated on other charges.

A preindictment delay is irrelevant to the purpose of the Speedy Trial Clause of the Sixth Amendment.   Only a formal indictment or information, or else the actual restraints imposed by arrest and holding to answer the criminal charge, engage the particular protections of the Speedy Trial Clause.  United States v. Lovasco, 431 U.S. 783, 788-789, 97 S.Ct. 2044, 2048 (1977), citing United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463 (1971).   Statutes of limitations provide predictable, legislatively enacted limits on prosecutorial delay and provide the primary guarantee against bringing overly stale criminal charges. Lovasco, 431 U.S. at 789, 97 S.Ct. at 2048, citing Marion, 404 U.S. at 320, 92 S.Ct. at 464.  There are no statutes of limitations for first or second degree murder in Louisiana.   La.C.Cr.P. art. 571.1; La.R.S. 24:30, 14:30.1.   Therefore, the State could have charged Sarpy at any time with the offenses of first or second degree murder, and a far longer delay before indictment and arrest would presumably not have violated Sarpy's constitutional rights.

This ground for relief is meritless.

5.

Sarpy next argues that the prosecutor committed misconduct by allowing the State's expert witnesses to testify falsely that the kitchen door was the point of entry.   Sarpy also contends his

attorney gave him ineffective assistance when he failed to impeach the credibility of the prosecutor's expert and other witnesses about the point of entry into the victims' home. Sarpy contends the point of entry was a window, not a door, and argues that the deadbolt on the kitchen door was not unlocked.

The Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using perjured testimony. Beltran v. Cockrell, 294 F.3d 730, 736 (5th Cir. 2002), citing Napue v. Illinois, 360 U.S. 264, 270, 79 S.Ct. 1173, 1177 (1959). In order for an allegation of perjured testimony to constitute a due process violation, a petitioner must show that the prosecution knowingly presented materially false evidence to the jury. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990), citing United States v. Martinez-Mercado, 888 F.2d 1484, 1492 (5th Cir. 1989).

Detective Trammel testified at trial that Sarpy's point of entry into the Mitchell house was through the kitchen door, at the far end of the house from the bedrooms; the bottom half of the kitchen door was wood and the top half had a window (Doc. 11, p. 601). Detective Trammel testified that window panes and wood slats had been removed from the door (Doc. 11, p. 601). Detective Trammel testified there was glass from the door's broken window laying on the floor inside the house (Doc. 11, p. 601).

Sarpy contends the point of entry was Tyler Mitchell's bedroom window, which was close to the front door. However, Detective

Trammel testified that Tyler's drum set had fallen against his bedroom window during the fight, damaging the blind hanging inside the window and breaking the window outward; the glass from broken window had fallen outside onto the concrete front porch (Doc. 11, pp. 598, 602).  It is noteworthy that, in his statement to the police, Sarpy said that he did not remember exactly how he got into the house, but recalled picking up something near the back porch to break a window (Doc. 11, pp. 1096-1097).

The physical evidence indicates that the point of entry was the window in the back door, not a bedroom window.  Therefore, Sarpy has not carried his burden of proving the prosecutor "allowed" the State's witness to testify falsely concerning the point of entry.  Also, Sarpy has not shown that his attorney erred by failing to impeach the credibility of the State's witness about the point of entry, or how he could have been prejudiced by the alleged false testimony as to the point of entry.

Since Sarpy has not shown that the prosecutor committed misconduct or that he had ineffective assistance of counsel, this ground for relief is also meritless.

6.

Finally, Sarpy claims the cumulative effect of the prosecutor's misconduct hindered his defense and resulted in a fundamentally unfair trial.  Since Sarpy has not carried his burden of proving the prosecutor committed any misconduct, this ground for

relief is meritless.

Ground 6 – Ineffective Assistance of Counsel

Sarpy next argues that the state court's decision to deny his ineffective assistance of counsel claim was unreasonable. Sarpy contends he had ineffective assistance of counsel when his attorney (1) failed to object to the prosecutor's prejudicial comments as to Sarpy's guilt during his opening statement and closing argument, (2) failed to object to the prosecutor showing the picture of the deceased victim's nude body to the jury, (3) accepted a joint stipulation as to Sarpy's past crimes, (4) failed to investigate the shoes allegedly left at the scene (to see whether they fit Sarpy), (5) failed to investigate why the Sheriff did not analyze the duffle bag of panties, (6) failed to present evidence of the $600,000 insurance policy on the deceased victim, which was taken out shortly before his death, and (7) failed to impeach the credibility of the prosecutor's expert and other witnesses about the point of entry into the victims' house.

1.

Sarpy contends his attorney was ineffective when he failed to object to the prosecutor's prejudicial comments as to Sarpy's guilt during his opening statement and closing argument.

As discussed above in Ground for Relief No. 5, Sarpy's claim that the prosecutor's comments were inappropriate was found to be meritless. Therefore, Sarpy's counsel had no ground on which to

object to the prosecutor's opening statement and closing argument.
Counsel is not required to engage in the filing of futile motions.
Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984), citing William
v. Beto, 354 F.2d 698, 703 (5th Cir.1965).   Therefore, Sarpy has
not carried his burden of proving he had ineffective assistance of
counsel and this ground for relief is meritless.

                                2.

     Sarpy also contends that  his attorney was ineffective when he
failed to object to the prosecutor's publication to the jury of the
picture of the deceased victim's nude body at the crime scene.

     The State proffered five photographs as evidence of the crime
scene (Doc. 11, p. 1045).   Sarpy's attorney challenged the
admissibility of the photographs on the ground that they were
highly inflammatory and prejudicial[6] (Doc. 11, pp. 330, 1044).
After a pretrial hearing on the motion to suppress, the trial judge
excluded two photographs since they showed the victim and not the
gunshot wounds, and admitted the other three photographs, finding
those photos were probative and necessary to his case (Doc. 11, pp.

---

     [6] Photographs which describe the person, place, or thing
depicted are generally admissible.  The test of admissibility for
allegedly gruesome photographs is whether the probative value of
the photographs outweighs the probable prejudicial effect that
may result from their display to the jury.  State v. Hendricks,
38, 945 (La. App. 2d Cir. 9/22/04), 882 So.2d 1212, 1214, citing
State v. Lindsey, 404 So.2d 466 (La. 1981).

330, 1045).[7]

Since a habeas court does not sit as a "super court" over a state court's evidentiary and procedural decisions, Sarpy must show that admission of the photographs violated his right to due process in a way that rendered his criminal proceedings fundamentally unfair.  See Castillo, 141 F.3d at 222.  The photographs in this case merely corroborated the testimony and were not a highly significant factor in the context of the entire trial.  Given the weight of the evidence against Sarpy, including his own statement, Sarpy has not shown that his trial was rendered fundamentally unfair by admission of the photographs.  Moreover, since Sarpy's attorney challenged the admissibility of the photographs, Sarpy has not carried his burden of proving that his attorney erred.

---

[7] Sarpy was originally charged with first degree murder and attempted first degree murder (Doc. 11, p. 355).  In Louisiana, first degree murder includes the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated burglary.  La.R.S. 14:30.  In Louisiana, aggravated burglary includes an unauthorized entering of any inhabited dwelling where a person is present with the intent to commit a felony or any theft therein if the offender is armed with a dangerous weapon.  La.R.S. 14:60.

Sarpy's charge was later amended to second degree murder (Doc. 11, p. 333), which includes the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including aggravated burglary (felony murder).  La.R.S. 14:30.1.  Since the elements of second degree murder/felony murder (La.R.S. 14:30.1) are included in first degree murder (La.R.S. 14:30), the trial judge's finding that the photographs were probative and necessary to the first degree murder charge was also applicable to the second degree murder charge, as well.

Therefore, Sarpy has not shown that he had ineffective assistance of counsel.  This ground for relief is meritless.

3.

Sarpy next contends his attorney was ineffective because he accepted a joint stipulation as to Sarpy's past crimes.  As already discussed above, Sarpy did not have ineffective assistance of counsel due to the introduction of evidence of Sarpy's prior burglary convictions.

4.

Next, Sarpy contends he had ineffective assistance of counsel because his attorney failed to adequately prepare for trial.  Specifically, Sarpy contends his attorney (1) failed to investigate the shoes allegedly left at the scene (to see whether they fit Sarpy), (2) failed to investigate why the Sheriff did not analyze the duffle bag of panties, and (3) failed to present evidence of the $600,000 life insurance policy, taken out shortly before the victim's death, when he asked Detective Trammel whether the victim's wife was having an affair.

A pair of shoes was found at the crime scene, and the Mitchell family denied that they belonged to them (Doc. 11, pp. 639-640).  The shoes were mentioned by Detective Trammell when he described the crime scene (Doc. 11, p. 598).  Detective Trammell further testified that the shoes were sent to the crime lab and processed, but there were multiple DNA profiles on them (Doc. 11, p. 639).  It

was determined that Sarpy was not a major DNA contributor to the
shoes and it could not be determined whether he was a minor
contributor (Doc. 11, pp. 689-690).   Detective Trammel testified
that Sarpy had said he left his shoes at the crime scene (Doc. 11,
p. 681).   Sarpy also said he had stolen the shoes in another
burglary, so the shoes belonged to someone else (Doc. 11, p. 690).
In his recorded statement to the police, Sarpy stated that his
shoes came off while he was in the house and he left them behind
(Doc. 11, p. 1101).   Sarpy also stated, in his recorded statement,
that he had probably gotten the shoes from another house he had
broken into (Doc. 11, p. 1102).

Since Sarpy admitted in his statement that he left his shoes
behind at the crime scene, that they were not his shoes but had
been stolen from someone else, and his attorney questioned the
witnesses extensively about the shoes and the DNA on the shoes,
Sarpy cannot show that his attorney committed an error or that he
was prejudiced by his attorney's failure to discover whether the
shoes were Sarpy's size.

This ground for relief is meritless.

5.

Sarpy also contends his attorney failed to inquire as to why
the Sheriff did not investigate the duffle bag of panties found at
the crime scene.   Sarpy submitted two letters from Detective
Townsend to the crime lab, stating it was authorized not to process

36

or analyze the black duffel bag containing several pairs of panties (Doc. 1, pp. 202-203).  Sarpy does not explain where the duffel bag of panties was found and what its relevance to his defense was, and the record does not disclose that information.

Therefore, Sarpy failed to carry his burden of proving that his attorney committed an error and that he was prejudiced thereby. Since Sarpy had not shown that he had ineffective assistance of counsel, this ground for relief is meritless.

6.

Next, Sarpy argues his attorney was ineffective when he failed to present evidence of the $600,000 insurance policy on the deceased victim, which was taken out shortly before his death.

Sarpy submitted a copy of the first page of a May 2005 application[8] for a $600,000 life insurance policy on Timothy Mitchell (Doc. 1, Ex. J); the application does not indicate who applied for the policy.  Moreover, the existence of an application does not mean that a policy was purchased and in effect at the time of Timothy Mitchell's death.  Unsupported allegations do not suffice to prove that Sarpy had ineffective assistance of counsel.

Sarpy also contends his attorney asked whether the victim's wife had been having a relationship with anyone, and Detective Trammel testified that he did not know of any relationships and he

---

[8] Timothy Mitchell was killed in June 2005 (Doc. 11, p. 355).

37

had not been given any names (Doc. 11, pp. 656-657).  Sarpy's counsel apparently explored that possibility as a motive for murder and did not find anything.

Since Sarpy has not shown that his attorney committed an error, Sarpy has not shown that he has ineffective assistance of counsel.  This ground for relief is meritless.

7.

Finally, Sarpy contends his attorney gave him ineffective assistance when he failed to impeach the credibility of the prosecutor's witness concerning the point of entry into the victims' home.  As already discussed above, Sarpy did not have ineffective assistance of counsel in this respect.

<u>Ground 7 - Challenges for Cause</u>

Finally, Sarpy contends the state court's decisions to deny his challenge for cause claims, as to potential jurors Bobby McPhearson, Lanette Nichols, and Letasha Washington, were unreasonable.  Sarpy contends his challenges for cause should have been upheld because those jurors knew witnesses and attorneys involved in his case.  The trial judge denied Sarpy's challenges for cause, finding all three jurors had bene rehabilitated, so Sarpy exercised peremptory challenges against them.[9]

---

[9] Sarpy contends his challenge for cause against potential juror Bobby McPhearson should have been upheld because McPhearson knew state witnesses Danny Hall and Ronnie Ross, as well as the prosecutor, B.J. Harrington.  McPhearson testified that he went to school with Danny Hall, that Billy Joe Harrington was his

One touchstone of a fair trial is an impartial trier of fact, "a jury capable and willing to decide the case solely on the evidence before it."  Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.  Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant a challenge for cause may assist parties in exercising their peremptory challenges. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554,

---

cousin (Doc. 11, p. 1297), and that he knew Ronnie Ross' parents very well and Ronnie Ross grew up near McPhearson (Doc. 11, p. 1298).  The defense attorney challenged McPhearson for cause, contending he has known Hall for a long time, and he did not believe McPhearson's judgment would be impartial (Doc. 11, pp. 1299-1300).  The trial judge denied the challenge, finding McPhearson had been rehabilitated, and Sarpy exercised a peremptory challenge to excuse McPhearson.

Sarpy contends his challenge for cause against potential juror Lanette Nichols should have been granted because Nichols knew Prosecutor B.J. Harrington.  Lannette Nichols testified that she is an accountant and knows B.J. Harrington because she has done his tax return for the last fifteen years (Doc. 11, pp. 1302, 1305).  Nichols also testified that she has known witness Victor Jones all of her life and witness Craig Jones for a long time (Doc. 11, p. 1306).  The defense attorney challenged Nichols for cause because he did not think she would be impartial, and the trial judge denied the challenge, finding she has been rehabilitated (Doc. 11, p. 1309).  Sarpy then excused Nichols on a peremptory challenge (Doc. 11, p. 1309).

Sarpy contends his challenge for cause against potential juror Letasha Washington should have been granted because she knew Prosecutor B.J. Harrington, Witness Danny Hall, Assistant D.A. Sylvester, defense attorney Alex Washington, and witness Victor Jones (Doc. 11, p. 1311).  The defense attorney challenged Washington for cause because she knew about the case from the newspaper article, and the trial judge denied the challenge (Doc. 11, pl. 1320).  Sarpy exercised a peremptory challenge to excuse Washington (Doc. 11, pp. 1320-1321).

104 S.Ct. 845, 849 (1984).

As a general rule, a trial court's erroneous venire rulings do not constitute reversible constitutional error so long as the jury that sits is impartial.  <u>Jones v. Dretke</u>, 375 F.3d 352, 355 (5th Cir. 2004), and cases cited therein.  Any claim that the jury was not impartial must focus on the jurors who ultimately sat.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.  <u>Soria v. Johnson</u>, 207 F.3d 232, 241 (5th Cir. 2000)(capital case).  Also, <u>Nichols v. Scott</u>, 69 F.3d 1255 (5th Cir. 1995).

Sarpy has not alleged or shown that the jury who sat at his trial was not impartial.   Therefore, the denial of Sarpy's challenges for cause did not violate his constitutional rights and this ground for relief is meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Sarpy's petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the District Judge at the time of filing.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of**

appealability should issue. *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing**.

THUS DONE AND SIGNED in Alexandria, Louisiana on the 12th day of September 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE